**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| L. Z. PPA KIM ZERN, | ) | 3:22-CV-665(SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BIGAIRBAG B.V., | ) | |
| *Defendant*. | ) | March 4, 2024 |

**RULING AND ORDER ON PLAINTIFF'S FIRST AND SECOND MOTIONS TO AMEND THE COMPLAINT**

Sarala V. Nagala, United States District Judge.

Minor Plaintiff L.Z., through her next friend and mother Kim Zern, initially filed suit against Defendant, BigAirBag B.V., in state court, alleging various violations of the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-572m *et seq.*, following injuries L.Z. claims to have sustained from an allegedly defective airbag used in connection with a trampoline at an adventure park.  Defendant then removed the case to federal court.  In May of 2023, the Court granted in part Defendant's motion to dismiss, and dismissed Plaintiff's claims for failure to warn, malfunction, negligence, breach of the implied warranty of merchantability, and fraudulent misrepresentation.  Accordingly, only Plaintiff's strict liability claims for manufacturing defect and design defect remain.

Presently before the Court are Plaintiff's first motion to amend her complaint, ECF No. 37, and Plaintiff's second motion to amend her complaint, ECF No. 44.  Defendant opposes both motions.

Plaintiff's proposed First Amended Complaint ("FAC"), ECF No. 37-1, seeks to remedy the deficiencies outlined in the Court's dismissal ruling, specifically with regard to her claims for

failure to warn, negligence, and fraudulent misrepresentation.  In addition, Plaintiff seeks to assert a new claim for breach of the implied warranty of fitness for a particular purpose.[1]

Plaintiff's proposed Second Amended Complaint ("SAC"), ECF No. 44-2, seeks to add allegations regarding information learned following the receipt of a report from Plaintiff's expert. These new allegations, Plaintiff avers, support three buckets of claims:  (1) her previously dismissed (and sought to be revived) claims of failure to warn, negligence, and fraudulent misrepresentation; (2) her proposed new claim of breach of the implied warranty of fitness for a particular purpose; and (3) her live claims of manufacturing and design defect.

For the reasons described herein, the Court GRANTS in part and DENIES in part both of Plaintiff's motions.  By **March 18, 2024**, Plaintiff shall file a Third Amended Complaint that complies with this ruling.

## I.    FACTUAL & PROCEDURAL BACKGROUND

All of Plaintiff's complaints have contained the following allegations, which are taken as true for purposes of this motion.  On April 17, 2019, while visiting the Thrillz Adventure Park in Danbury, Connecticut, Plaintiff jumped off a trampoline launch pad and landed on an "Adventure Model" airbag provided by Defendant, which was improperly inflated.  Due to the improperly inflated airbag, Plaintiff sustained a number of injuries, some or all of which may be permanent. Plaintiff alleges that Defendant violated the CPLA in the manufacturing, designing, selling, and marketing of the airbag, and that these violations ultimately caused Plaintiff's injuries.  As necessary, further factual allegations are provided in the sections that follow.

On May 3, 2023, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's original complaint.  *Zern v. BigAirBag B.V.*, No. 3:22-CV-665 (SVN), 2023 WL

---

[1] Plaintiff concedes she is no longer pursuing claims for malfunction or breach of the implied warranty of merchantability.  *See* Pl.'s Reply in Supp. of Mot. to Amend, ECF No. 41 at 1.

9783149 (D. Conn. May 3, 2023).  Specifically, the Court dismissed Plaintiff's claims for negligence, failure to warn, malfunction, fraudulent misrepresentation, and breach of the implied warranty of merchantability, but denied Defendant's motion as to Plaintiff's strict liability claims for manufacturing and design defect, finding Plaintiff sufficiently alleged that at least two aspects of the airbag were defective—its "level of fill and the displacement of fill upon impact." *Id.* at *5. In its ruling, the Court provided that any motion for leave to amend the complaint to remedy the deficiencies identified by the Court filed on or before May 24, 2023, would be governed by the standard of Federal Rule of Civil Procedure 15(a)(2), and any such motion filed thereafter would be subject to the more stringent standard of Federal Rule of Civil Procedure 16(b)(4). *Id.* at *10. The Scheduling Order also provided that any motion to amend the complaint or join parties must be filed by May 24, 2023, and that any motion filed after that time would be subject to the standard of Rule 16(b).  *See* Scheduling Order, ECF No. 36 at 1.

A. First Motion to Amend

Plaintiff's first motion for leave to amend the complaint was filed on May 24, 2023, the deadline set in the Court's dismissal ruling and by the Scheduling Order.  ECF No. 37.

The proposed FAC first adds allegations relating to Plaintiff's previously dismissed failure to warn, negligence, and fraudulent misrepresentation claims.  With respect to the alleged failure to warn, the proposed FAC includes new allegations that Defendant's warnings were inadequate in that they (1) "fail[ed] to contain any instructions and/or warnings sufficient to alert users to the dangers the airbag posed;" (2) because "any warning and the blower system which would convey the true extent of the risks involved would be hidden by the airbag cover and the blower system[']s reduced noise feature;" and (3) that the airbag "fail[ed] to have an adequate alarm warning system designed to sound when the airbag pressure levels deviated from the intended level."  *See* Proposed

FAC, ECF No. 37-1 ¶¶ 12(e), 16. In support of her negligence claim, Plaintiff alleged that Defendant was negligent in the "designing, testing, manufacturing, distributing, marketing, promotion, and selling of the airbag," and violated its duty to exercise due care by, among other things, "fail[ing] to properly and adequately test the airbag including for displacement volumes and the alarm warning system," failing to comply with certain industry standards "and/or obtain a compliance certification," and distributing a product that it knew allowed users to land on the airbag "without knowing whether the airbag was properly inflated or whether the blower system was adequately functioning, since the blower system was concealed and within the airbag." *See id.* ¶¶ 13, 14, 15. The proposed FAC also adds one new allegation regarding the dismissed fraudulent misrepresentation claim, stating that the misrepresentation was a particular statement on Defendant's website. *See id.* ¶ 12(f).

In addition, the proposed FAC adds allegations purportedly supporting a new claim for breach of the implied warranty of fitness for a particular purpose. Specifically, it alleges that Defendant "negligently misrepresented material facts regarding the airbag's safety, efficacy, and fitness for its particular purpose of an adventure park by claiming the airbag was fit for that intended purpose" when it was not, that it was "foreseeable" to Defendant that "minor children would be relying on the safety of its airbag to safely break their fall when jumping off a launch pad," and that Defendant "impliedly warranted . . . that this model of airbag was . . . safe and fit for the purpose intended when used under ordinary circumstances and in the ordinary manner," when in fact the "design was far too dangerous for use by the public as it allowed for users to land on the airbag without proper air pressure regulation." *See id.* ¶¶ 14(a), 17, 18.

B.  <u>Second Motion to Amend</u>

While Plaintiff's first motion to amend was pending, Plaintiff received a report from her expert that she claims provided information that allowed her to "better cure the pleading deficiencies noted in the Court's ruling o[n] Defendant's motion to dismiss with the addition of more factual support."  Pl.'s Mem. in Supp. of Sec. Mot. to Amend, ECF No. 45 at 3.  Plaintiff then notified Defendant of her intention to further revise her complaint, and submitted a copy of the second motion to amend and the proposed SAC to Defendant on October 11, 2023.  On November 10, 2023, having received no response from Defendant, Plaintiff filed her second motion for leave to amend, ECF No. 44.

The proposed SAC, like the proposed FAC, includes allegations that support Plaintiff's previously dismissed claims for failure to warn, negligence, fraudulent misrepresentation, and her new implied warranty claim.  In addition to the amendments included in the proposed FAC, the proposed SAC includes allegations that the product "fail[ed] to contain any instructions and/or warnings against users performing inverted aerials, or flips," and was distributed "without disclosing the required static pressure for safe use," that Defendant "failed to properly and adequately test the airbag for proper inflation by using an adult of an unknown height and weight while marketing and promoting the airbag as sufficient for adventure parks tailored to the plaintiff and other minor children," and that Defendant made a second misrepresentation on its website.  *See* Proposed SAC, ECF No. 44-2 at ¶¶ 12(e)(iii), 12(g), 12(j), 14(c).  Throughout, the proposed SAC emphasizes that the airbag did not allow for "proper attenuation," that "insufficient static pressure" could contribute to improper inflation, and that there were no warnings or method provided to aid users in confirming proper static pressure, and therefore proper inflation.  *See, e.g.*, *id.* at 12(c), 14(b), 15, 16, 18.

## II.     LEGAL STANDARD FOR MOTIONS TO AMEND

 "The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. New York U.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022).

### A.  Federal Rule of Civil Procedure 15

Rule 15(a)(1) first provides a liberal standard in which "a plaintiff may freely amend her pleadings . . . as of right without court permission." *Id.* Outside of these enumerated circumstances, however, a plaintiff seeking to amend must either move the court for leave or obtain the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) is a lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires." *Id.*

Courts will deny a proposed amendment under Rule 15(a)(2) only "upon a showing of 'undue delay, bad faith, dilatory motive, or futility.'" *Sacerdote*, 9 F.4th at 115. An amendment is futile if it "could not withstand a motion to dismiss" under Rule 12(b)(6). *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015) (citation omitted). "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "legal conclusions, [or] threadbare recitals of a cause of action, supported by mere conclusory statements," will not alone be sufficient to survive a motion to dismiss. *Balintulo*, 796 F.3d at 165 (citation omitted). "The party opposing a motion to amend bears the burden of establishing that amendment would be futile." *Brach Fam. Found., Inc.*, 2018 WL 1274238, at *1.

6

B.  <u>Federal Rule of Civil Procedure 16</u>

The period of liberal amendment under Rule 15(a)(2) concludes once the court has issued a scheduling order that limits the time for amendments to the pleading and provides that amendments after that date will be subject to Rule 16.  *Sacerdote*, 9 F.4th at 115.  After the stated amendment deadline, a court must balance the standard set out in Rule 16(b)(4) with that of Rule 15 to evaluate the permissibility of the proposed amendment.  *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (noting that a plaintiff who "wishes to amend after the scheduling deadline has passed . . . must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend") (emphasis added) (cleaned up); *Borozny v. Raytheon Techs. Corp., Pratt & Whitney Div.*, No. 3:21-CV-1657 (SVN), 2023 WL 7037523, at *2 (D. Conn. Oct. 26, 2023) (applying and balancing the standards of both Rule 15 and Rule 16 where amendment was sought after the Court's scheduling order deadline).

Under Rule 16(b)(4), a plaintiff should be permitted to assert an amended complaint after a scheduling order's deadline to do so only if there is "good cause" for the modification of the scheduling order.  *See* Fed. R. Civ. P. 16(b)(4).  The "primary consideration" in determining whether good cause exists to modify a scheduling order, so as to allow an amended complaint, is "whether the moving the party can demonstrate diligence."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  For instance, "[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline."  *Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2021 WL 4248887, at *36 (D. Conn. Sept. 17, 2021) (citation omitted).  The Court can also consider other relevant factors, including whether allowing amendment of the complaint at a particular stage of litigation would

prejudice the defendant. *Kassner*, 496 F.3d at 244; *see also Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993) (noting that in considering whether there is prejudice to the opposing party, a court looks to "whether the assertion of the new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."); *Pasternack*, 863 F.3d at 174 ("[D]elay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice.").

C. Discussion

The Court first concludes that there is good cause to modify the scheduling order under Rule 16 with respect to Plaintiff's second motion for leave to amend, and then discusses whether all of Plaintiff's proposed amendments should be permitted under Rule 15.

Initially, the parties do not dispute that Plaintiff's first motion is governed by Rule 15, given that it was timely filed in accordance with the Court's decision on the motion to dismiss and the operative Scheduling Order.[2]  Further, there has been no suggestion of undue delay, bad faith, or a dilatory motive with respect to the first motion; thus, the Court need only address Defendant's argument that Plaintiff's proposed amendments are futile. *See Sacerdote*, 9 F.4th at 115.

With respect to Plaintiff's second motion, which was filed well after the deadline for amendment set forth in the Court's motion to dismiss ruling and in the Scheduling Order, the Court

---

[2] In another case, this Court has applied Rule 16's good cause standard to a plaintiff's attempt to add a new claim to its complaint following a motion to dismiss ruling that permitted the plaintiff to "file an amended complaint" to "address the deficiencies" described in the ruling, like the one here. *See Conservation L. Found., Inc. v. Gulf Oil Ltd. P'ship*, No. 3:21-CV-00932 (SVN), 2023 WL 4145000, at *9 (D. Conn. June 23, 2023) (*CLF*).  The defendant argued that amendment of the new claim was governed by Rule 16, and the Court agreed, finding that its motion to dismiss ruling had provided Plaintiff only a "limited opportunity to seek to amend its complaint to remedy the deficiencies described in the dismissal ruling," not an opportunity to add a new claim. *Id.*  The present case is distinguishable because, here, Defendant does not argue that Plaintiff's attempt to assert a new claim should be governed by Rule 16. Accordingly, in this case, Rule 16 does not govern Plaintiff's first motion to amend insofar as it seeks to assert a new claim for breach of the implied warranty of fitness for a particular purpose.

must first decide whether there is good cause to modify the scheduling order, as required by Rule 16(b)(4). *See Sacerdote*, 9 F.4th at 115. Though it is a close call, the Court finds that the good cause standard is met here.

Plaintiff argues she diligently filed the proposed SAC "upon receiving an expert witness report" and that the "proposed amendments reflect detailed information obtained on August 9, 2023 from an inflatable, trampoline and amusement device expert." ECF No. 45 at 1–2. Plaintiff notes that she "does not entirely believe this amendment is required,"[3] but requests leave to amend "out of an abundance of caution and to reflect new facts learned." *Id.* at 1. Plaintiff's three-month delay in submitting the proposed SAC to the Court does not in itself suggest a lack of diligence. It is undisputed that Plaintiff received the expert report on August 9, sent the proposed SAC to Defendant on October 11, and filed the proposed SAC on November 10, without having received a response from Defendant. Although the Court acknowledges that Plaintiff's explanation for this three-month delay is somewhat bare, *see id.* at 3, courts in this Circuit have allowed amendments brought within similar time frames. *See e.g.*, *Vanguard Dealer Services, LLC v. Bottom Line Driven, LLC*, No. 3:21CV00659(SALM), 2022 WL 1239951, at *3 (D. Conn. Apr. 27, 2022) ("Plaintiff has established that it was diligent in pursuing leave to amend its complaint. . . . Plaintiff filed the instant motion . . . just over two months after it became aware of the bases for its proposed amendment.); *Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (granting leave to amend nine months after scheduling order deadline due to "delayed discovery and settlement negotiations"). Thus, Plaintiff has demonstrated she was adequately diligent in seeking amendment.

---

[3] With this statement, Plaintiff points the Court to her reply in support of her first motion to amend, ECF No. 41, perhaps suggesting Plaintiff's view that the proposed SAC is unnecessary because the proposed FAC fully cured any deficiencies previously identified. Regardless of Plaintiff's somewhat ambiguous views on the necessity of the amendments, as the Court is presented with two motions to amend, the Court will address both motions in full.

Plaintiff also contends that Defendant is not prejudiced by the proposed amendments as "discovery has recently begun," "the nature of Plaintiff's claims have not changed," and "[t]he proposed amendments serve only to more specifically allege the facts supporting Plaintiff's allegations and to conform certain allegations more closely to the evidence just recently received." ECF No. 45 at 2. The Court agrees that the proposed SAC does not significantly alter the nature or substance of Plaintiff's claims, as she continues to assert only CPLA claims arising out of the same discrete set of factual circumstances, and that this weighs against finding any prejudice to defendant. *See Block*, 988 F.2d at 350 (noting that one consideration of prejudice to the opposing party is "whether the assertion of the new claim would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial"). This lack of prejudice further bolsters the Court's conclusion that there is good cause to modify the scheduling order.

The Court rejects each of Defendant's three arguments that Plaintiff has failed to show good cause under Rule 16. First, the Court rejects Defendant's puzzling argument that, because the amendments Plaintiff proposes come from an expert's report (obtained on August 9, 2023), they are simply an "expert's analysis/conclusions" and cannot constitute "new *facts* which the Plaintiff did not know before the May 24, 2023, deadline." *See* Def.'s Opp. to Sec. Mot. to Amend, ECF No. 48 at 2. The Court fails to see why as a general matter an expert's report could not provide Plaintiff with information upon which to base new factual allegations. *See CLF*, 2023 WL 4145000, at *9 (recognizing that expert's analysis provided plaintiff with "purported facts," although ultimately denying leave to amend). Defendant does not clarify which paragraphs it believes to be non-factual expert analysis, and the Court cannot discern any.

Second, Defendant argues (somewhat implicitly) that, because there is an ongoing state court case involving the same incident and product, Plaintiff somehow should have known the

information contained in the proposed SAC prior to May 24, 2023.  *See* ECF No. 48 at 2–3; *see also Zern v. Thrillz, LLC et al.*, Case No. FST-CV20-6047552-S (Conn. Super. Ct.).   This argument, too, fails, as it does not provide any detail which would allow the Court to conclude that Plaintiff "knew, or should have known" the specific information underlying the amendments in advance of May 24, the original amendment deadline, or August 9, when Plaintiff received the expert report, absent some dilatory motive or bad faith.  *See Luck*, 2021 WL 4248887, at *36 (noting that "[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline").  Although no doubt there is overlap between this case and the state court case, Defendant is not a part of the state court case, and it is not clear from either party's submissions what discovery (including involving this particular expert) has occurred in that case.  As for discovery in this case, it is still ongoing, and had only been ongoing for about three months when Plaintiff received the expert report.  *See* ECF No. 36.  Thus, the Court is not prepared to conclude based on the limited submissions provided that Plaintiff was not diligent in pursuing this information and incorporating it into her proposed SAC, despite that there is an ongoing state case.[4]

Third, Defendant notes in a footnote that the various proposed amendments have "needlessly complicated and increased the cost of this litigation, by requiring Defendant to file *three* briefs in response to the complaint . . . and this Memorandum," in a (somewhat oblique) attempt to argue it is prejudiced by the late amendment.  *See* ECF No. 48 at 3 n.3.  To the extent

---

[4] Admittedly, certain paragraphs in the proposed SAC contain information that it is not clear would have come from an expert report.  *See, e.g.*, ECF No. 44-2 ¶¶ 12(e)(iii) (product contained no warnings against performing inverted aerials or flips), 12(g) (describing alleged misrepresentation on Defendant's website).  However, the Court has not been presented with the expert report in connection with this motion, and no specific paragraph has been challenged by Defendant as containing information that Plaintiff did not learn from the expert's report or otherwise should have learned prior to May 24, 2023; thus, the Court accepts Plaintiff's representation that the amendments reflect information learned from an expert report and facts learned since May 24, 2023, *see* ECF No. 45 at 1, and, regardless, as the Court finds there is no prejudice to Defendant, will not conclude that Plaintiff lacked diligence in proposing the amendments.

that is the case, the Court does not find that Defendant has carried its burden of demonstrating prejudice sufficient to defeat good cause. *See Pasternack*, 863 F.3d at 174 (recognizing the general rule in the Second Circuit that amendment will be allowed "in the absence of a showing by the nonmovant of prejudice or bad faith") (citation omitted). It has not argued, for instance, that permitting the amendments proposed by the SAC, and potentially adding back previously dismissed CPLA theories or a new CPLA theory, would require it to "expend significant additional resources" in preparation for trial or "significantly delay the resolution of the dispute," *see Block*, 988 F.2d at 350. Its argument appears to go only to past litigation expense, not any future prejudice it will suffer if amendment were allowed and, regardless, litigation expense "does not, without more, constitute undue prejudice." *See Pasternack*, 863 F.3d at 174.

Having found that Plaintiff has met the good cause standard for modification of the scheduling order under Rule 16, the Court must nonetheless consider Defendant's primary contention—that the proposed amendments contained in the SAC are futile. *See Pasternack*, 863 F.3d at 174 n.10; *Borozny*, 2023 WL 7037523, at *2. Because Defendant's remaining argument—futility—is a Rule 15 argument that applies equally to both motions to amend, the Court will proceed by analyzing on a claim-by-claim basis whether Plaintiff's proposed amendments are futile and therefore barred by Rule 15. *See* ECF No. 48 at 3–5, 1 n. 2, (arguing that the proposed SAC is futile, and noting that Defendant "incorporates and relies upon its opposition to Plaintiff's first motion to amend" in opposing the SAC).

### III.    FUTILITY OF PROPOSED AMENDMENTS

All of Plaintiff's claims are brought under the CPLA. As the CPLA was not intended to alter the substantive product liability rights that existed at common law, the Court looks to the common law requirements of each theory of liability asserted. *See LaMontagne v. E.I. du Pont de*

*Nemours & Co.*, 41 F.3d 846, 855–56 (2d Cir. 1994).  For ease of reference, the Court cites to the proposed SAC, ECF No. 44-2, which contains all proposed new allegations, in the sections that follow.

      A.  <u>Failure to Warn</u>

The Court first addresses Plaintiff's failure to warn theory, which is a strict liability theory governed by Conn. Gen. Stat. § 52-572q.  The failure to warn of "the product's unreasonably dangerous propensities," constitutes, in and of itself, a product defect.  *Sharp v. Wyatt, Inc.*, 31 Conn. App. 824, 833 (1993), *aff'd*, 230 Conn. 12 (1994).  "Strict liability applies to failure to warn claims where adequate warnings or instructions were not provided and where the harm suffered would not have occurred had adequate warnings been given."  *Karazin v. Wright Med. Tech., Inc.*, No. 3:17CV823 (JBA), 2018 WL 4398250, at *5 (D. Conn. Sept. 14, 2018); *see also* Conn. Gen. Stat. § 52-572q(c) (stating that a claimant must "prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm").  At the pleading stage, although plaintiffs who assert failure to warn theories generally do not have to allege detailed facts regarding what warnings should have been provided, *see Karazin*, 2018 WL 4398250, at *5, they cannot rely on conclusory allegations that, for example fail to allege "whether the [product] was accompanied with any warnings or instructions at all and, if so, what they stated and why they were inadequate."  *See Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-00217 (CSH), 2019 WL 1258918, at *3 (D. Conn. Mar. 18, 2019) (*Lennox I*); *see also Mals v. Smith & Nephew, Inc.*, No. 3:19-CV-01770 (VLB), 2020 WL 3270835, at *6 (D. Conn. June 17, 2020) (dismissing failure to warn claim for failure to "specify what warnings [plaintiff] did receive about the product and how they were deficient").

The Court previously dismissed Plaintiff's claim of failure to warn for failure to allege what warnings were provided and how they were inadequate, as Plaintiff alleged only that "the warnings and instructions which were given and which accompanied [the] airbag were inadequate and failed to provide sufficient notice to [Plaintiff] of the dangerous propensities of said product." *See Zern*, 2023 WL 9783149, at *7 (citing Compl., ECF No. 1-2 ¶ 12(e)) (alterations in original). Plaintiff's proposed SAC includes several new allegations targeted at curing this deficiency. *See* ECF No. 44-2 ¶¶ 12(e), 12(j), 16. Viewing these allegations in the light most favorable to Plaintiff, as the Court must at this stage, they seem to indicate that Plaintiff is pursuing alternative theories: (1) that any warnings provided by Defendant were deficient, *see, e.g.*, *id.* ¶ 12(e)(iii) (failure to warn against performing flips); and (2) that no warnings were provided at all, *see, e.g.*, *id.* ¶ 12(e)(iv) (failed to contain "any instructions and/or warnings sufficient to alert users to the dangers"). Plaintiff's briefing confirms this. *See* Pl.'s Reply in Supp. of Sec. Mot. to Amend, ECF No. 49 at 4–5 (noting that "the point of the matter is that the Defendant failed to provide *any* warnings," but the Plaintiff "still included" specific warning deficiencies in proposed SAC).

At the pleadings stage, plaintiffs are entitled to pursue alternative theories. *See Apple v. Atl. Yards Dev. Co*., LLC, No. 11-CV-5550 (JG) (JMA), 2012 WL 2309028, at *6 (E.D.N.Y. June 18, 2012) (citing cases). However, many of the new allegations, particularly regarding Plaintiff's theory that the warnings provided were deficient, are conclusory. *See, e.g.*, ECF No.44-2 ¶ 12(e)(i) (warnings provided an "[i]nsufficient alert to the plaintiff and general public as to the risk of adverse events associated with the airbag"). And though Plaintiff also provides some examples of specific warnings that should have been provided, *see, e.g.*, *id.* ¶ 12(e)(iii) (failure to warn of the risk of flips); *id.* ¶ 12(j) (failure to disclose the required static pressure for use), Plaintiff still fails to allege, with respect to her first theory, what warnings were actually provided—a fatal

deficiency. *See Mals*, 2020 WL 3270835, at *6 (dismissing failure to warn claim where plaintiff alleged he was not warned that failure of one part of product could cause failure of entire product, but "failed to specify what warnings he did receive about the product and how they were deficient"); *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 98 (D. Conn. 2020) (dismissing failure to warn claim where plaintiff, who alleged that defendants failed to warn him that a defective airbag was installed in the product, "failed to offer any specific factual allegations concerning the warnings he did receive").

However, the Court finds that, albeit barely, Plaintiff has pled sufficient detail in the proposed SAC to be allowed to pursue a failure to warn claim based on the theory that no warnings were provided. In connection with its first motion for leave to amend, Plaintiff sought to add paragraphs stating that the product "fail[ed] to contain any instructions and/or warnings sufficient to alert users to the dangers the airbag posed," *see* ECF No. 37-1 ¶ 12(e)(iii) and allegations that any warnings would have been "hidden by the airbag cover," bolstering the claim that there were either no warnings or no visible warnings, *id.* ¶ 16. In the proposed SAC, Plaintiff also alleges that the product failed to contain warnings against users performing flips. ECF No. 44-2 ¶ 12(e)(iii).

Defendant recognizes that a failure to warn claim can be based on the failure to provide any warnings at all, but argues that Plaintiff's allegations state no such theory. *See* Def.'s Opp. to First Mot. to Amend, ECF No. 40 at 4 n.3. Although the Court agrees that the allegations are less than crystal-clear, and certainly not as straightforward as Plaintiff's briefing—which cannot itself amend Plaintiff's complaint—*see Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 364 (D. Conn. 2012), the Court will allow Plaintiff to proceed on a failure to warn claim in light of her new allegations regarding the failure to provide any warnings at all. *See Schulz v. Medtronic, Inc.*, No.

3:21-CV-00414 (MPS), 2022 WL 503960, at *4 (D. Conn. Feb. 18, 2022) *(*dismissing failure to warn claim because plaintiff did not allege that defendant "failed to give any warnings" or that the warnings given were inadequate).[5]

In sum, Plaintiff is granted leave to amend her complaint insofar as it reinstates a claim for failure to warn, but only as to a theory that Defendant failed to provide any warnings at all—not as to a theory that any alleged warnings given were insufficient.

### B. Negligence

A CPLA negligence claim is governed by the same principles as that of an ordinary cause of action for negligence. *LaMontange*, 41 F.3d at 856; *Karazin*, 2018 WL 4398250, at *6. "To prevail on a claim for negligence under the CPLA, a plaintiff must establish: '(1) duty; (2) breach of that duty; (3) causation; and (4) actual injury.'" *Leonard*, 504 F. Supp. 3d at 93 (quoting *Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 51 (D. Conn. 2009)).

The test to establish a legal duty of care requires: "'(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular

---

[5] In addition, the Court notes that aspects of Plaintiff's proposed SAC relating to the inadequacy of the product warnings, namely paragraphs 12(e)(v) and 16, which allege that the product did not have an adequate alarm warning system and that any warnings would have been hidden by the airbag cover, could support a design defect claim, in that the failure to have an adequate warning system and the inclusion of an airbag cover may have made the product unreasonably dangerous. *See Karazin*, 2018 WL 4398250, at *4 (noting that a design defect claim is "predicated on a product which is 'otherwise properly manufactured, but is nonetheless unreasonably dangerous because its attributes can cause an unexpected injury'") (citation omitted). Defendant recognizes as much, at least with respect to the alarm warning system, in that it does not object to the amendments in paragraphs 12(k) and 12(l) (which also add allegations regarding the alarm warning system). *See* ECF No. 48 at 6 n.5 (noting that Defendant does not object to certain amendments which are "modest line edits or concern Plaintiff's manufacturing defect and design defect strict liability claims"). The new allegations are closely connected to the design defect claim previously allowed by the Court, which related to the level and displacement of air within the airbag. Thus, the Court finds that Plaintiff's amendments regarding the allegedly inadequate alarm system and the airbag cover, in addition to supporting her failure to warn claim, are also permissible allegations regarding her design defect claims.

plaintiff in the case.'" *Id.* at 93–94 (citation omitted). "Breach of that duty occurs when a defendant fails to exercise reasonable care." *Philadelphia Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-00217 (CSH), 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020) (*Lennox II*). Industry standards may be relevant to determining the standard of care, and whether that standard has been breached. *See McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 110–11 (D. Conn. 2014) (allowing negligent manufacturing claim in part based on violation of federal standards); *see also Blakely v. Connecticut Airport Auth.*, No. HHDCV196106036S, 2021 WL 4895282, at *7 (Conn. Super. Sept. 20, 2021) ("[I]ndustry standards are viewed by the court as probative evidence regarding liability, but not determinative of immunity or liability as a matter of law); *Gleeson v. Rust-Oleum Corp.*, No. 3:11-CV-60 (AVC), 2013 WL 11331281, at *5 (D. Conn. Sept. 16, 2013) (finding a genuine issue of material fact existed in a plaintiff's negligence claim sufficient to survive summary judgment, when plaintiffs alleged that product was below industry standards as installed).

The Court previously dismissed Plaintiff's negligence claim primarily because Plaintiff's original complaint failed to allege that Defendant breached its duty of care, as it alleged only that it was foreseeable to Defendant that "minor children would be depending on the safety of its airbag," and that Defendant "was negligent in failing to properly and adequately test the airbag prior to marketing it." *See Zern*, 2023 WL 9783149, at *8; *see also* ECF No. 1-2 ¶¶ 11, 12(i). Plaintiff's proposed SAC now alleges that defendant had a "duty . . . to exercise due care in designing, testing, manufacturing, distributing, marketing, promotion, and selling of the airbag," and that it breached this duty (and caused Plaintiff injury) by, among other things, "fail[ing] to properly and adequately test the airbag including for proper attenuation and the alarm warning system," "fail[ing] to comply" with certain manufacturing and design standards set by the

American Society for Testing and Materials ("ASTM"), "fail[ing] to properly and adequately test the airbag for proper inflation by using an adult of an unknown height and weight while marketing and promoting the airbag as sufficient for adventure parks tailored to the plaintiff and other minor children," and marketing a product that it knew was too dangerous in that it allowed a person to land on the airbag "without providing a static pressure range to accurately maintain for proper inflation," thereby rendering users unaware "whether the airbag was properly inflated or whether the blower system was adequately functioning, since the blower system was concealed and within the airbag." *See* ECF No. 44-2 ¶¶ 13–15. Defendant argues these amendments continue to fail to state a claim for negligence, as they do not show how Defendant "knew or should have known that its product suffered from any shortcomings," and that, to the extent Defendant did fail to follow any ASTM standards, Plaintiff's new allegations do not show how the failure to so was negligent, as Plaintiff's proposed SAC does not allege why Defendant failed to comply, or how the standards applied. *See* ECF No. 40 at 6, 6 n.5; ECF No. 48 at 3–4.

While this is again a close question, the Court finds that Plaintiff's amendments are sufficient to cure the previously identified deficiencies in her negligence claim. Although certain new allegations are simply conclusory allegations that the Court does not credit, *see, e.g.*, ECF No. 44-2 ¶ 14(a) (Defendant "negligently misrepresented material facts regarding the airbag's safety, efficacy, and fitness for a particular purpose"), Plaintiff's non-conclusory allegations regarding the specific testing failure (using an adult to test a product targeted towards minors) and the failure to comply with ASTM standards are sufficient to state a claim for negligence. *See McConologue*, 8 F. Supp. 3d at 110 (denying motion to dismiss claim for negligent manufacturing based on non-preempted manufacturing defect claim for failure to comply with federal standards). Although Defendant is correct that Plaintiff does not point to "prior complaints or claims" that

would have suggested Defendant's knowledge, *see Lennox II*, 2020 WL 705263, at *7 n.11, Plaintiff's proposed SAC includes enough specific factual detail regarding deficiencies in Defendant's process to demonstrate that her amendments are not futile, as on a motion to dismiss these facts could allow the Court to draw "reasonable inference[s]" in Plaintiff's favor regarding Defendant's knowledge. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Richard Mfg. Co. v. Richard*, 513 F. Supp. 3d 261, 290 (D. Conn. 2021) ("The Court should dismiss claims for futility 'only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims.'") (citing *Pangurn v. Culbertson*, 200 F.3d 65, 70–71 (2d Cir. 1999)).  At the very least, taking the proposed SAC as a whole, Plaintiff pleads far more than "bare legal conclusions and recitations of the elements of negligence." *See Karazin*, 2018 WL 4398250, at *6–*7 (granting motion to dismiss negligence claim where plaintiff merely "reiterat[ed]" strict liability allegations and alleged that the product was "negligently designed and manufactured").

Accordingly, Plaintiff's motion to amend is granted insofar as it seeks to reinstate a negligence claim.

### C.  Fraudulent Misrepresentation

The Court reaches a different conclusion with respect to Plaintiff's fraudulent misrepresentation claim, however.  In Connecticut, a Plaintiff asserting a claim for fraudulent misrepresentation must allege "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 315–16 (D. Conn. 2016) (quoting *Updike, Kelly & Spellacy, P.C.*

*v. Beckett*, 269 Conn. 613, 643 (2004)).  As outlined by the Court in its prior dismissal ruling, courts have generally applied the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) to claims for fraudulent misrepresentation under the CPLA.  *See Zern*, 2023 WL 9783149, at *9.  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," where they allege fraud or mistake.  Fed. R. Civ. P. 9(b).  More specifically, to comply with Rule 9(b) Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Karazin*, 2018 WL 4398250, at *7 (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)); *accord Leonard*, 504 F. Supp. 3d at 99–100.

Plaintiff's fraudulent misrepresentation claim was previously dismissed for failure to state a claim because Plaintiff conceded her allegations did not satisfy the requirements of 9(b).  *Zern*, 2023 WL 9783149, at *9–*10.  The Court rejected Plaintiff's arguments that (1) she had successfully alleged that the fraudulent statements were in Defendant's exclusive control; and (2) that this alleged "control" somehow excused her failure to plead in compliance with 9(b).  *Id.*

Paragraphs 12(f) and 12(g) of the proposed SAC are targeted at reviving Plaintiff's fraudulent misrepresentation claim.  *See* ECF No. 44-2.  These paragraphs allege that Defendant "misrepresented to the plaintiff and the general public that the airbag in question was safe for use by the public" by making statements on its website regarding the airbag's safety, including that the airbag has "unrivalled safety and maximum durability" and "excellent and safe impact absorption," and that "[a]fter installation it's as simple as turning on the blower, wait a minute for inflation and you're ready to jump!."  *See id.* ¶¶ 12(f), 12(g).  Defendant contends these additions fail to meet the particularity standard of Rule 9(b), and that Plaintiff also fails to allege she relied

on the statements, as required to state a claim.  Plaintiff counters that demonstrating reliance is not required, and that alleging a statement came from Defendant's website is sufficient to allege Defendant's control over the statement, remedying the previously identified deficiency.

Plaintiff's proposed amendment is futile for several reasons.  First, these paragraphs do not specify when the statements were made, and thus fail to comport with Rule 9(b)'s pleading requirements.  *See Karazin*, 2018 WL 4398250, at *7.  Furthermore, Plaintiff's complaint makes no attempt to plead that she acted in reliance on these statements, as she must to state a claim for fraudulent misrepresentation.   See *id.* at *7 n.4 (noting that one element of fraudulent misrepresentation under Connecticut law is demonstrating that the party acted on a fraudulent statement to his injury); *Batoh*, 167 F. Supp. 3d at 316 (dismissing misrepresentation claims on summary judgment where plaintiff failed to show that challenged statements were "read and relied on").  Although the proposed SAC obliquely states that the statement was made "to the plaintiff," in addition to the general public, it does not go so far as to state that Plaintiff read these statements, much less was induced to go to Thrillz Adventure Park and engage with the Defendant's product as a result of these statements.  Plaintiff's attempts to factually distinguish *Batoh*, *see* ECF No. 41 at 5, do not undermine the clearly settled legal principle that reliance is a necessary element of Plaintiff's misrepresentation claim.

Finally, the Court notes that its ruling on the motion to dismiss was in no way meant to suggest that Defendant's control over a statement is enough to overcome the pleading requirements of fraudulent misrepresentation.  Plaintiff has pointed to no cases that suggest that a Defendant's control over the statements on its website relieves the Plaintiff of her burden of pleading with particularity her fraudulent misrepresentation claim.  The cases cited by the Court in its previous ruling all dealt with a defendant's "control" over information relevant to a Plaintiff's pleading

burden with respect to other product liability claims; for instance, a defendant's control over manufacturing information may be considered in determining whether a plaintiff has met her burden to plead specific details about a manufacturing defect. *See Zern*, 2023 WL 9783149, at *9 (citing cases). Indeed, Defendant's control over its website does not explain how the information needed to support Plaintiff's fraudulent misrepresentation claim—including information about whether and to what extent Plaintiff relied on the statements on Defendant's website—is not in *Plaintiff's* control. *See id.*

The amendments proposed by Plaintiff with respect to her fraudulent misrepresentation claim are therefore futile, and the Court will deny leave to amend to the extent Plaintiff seeks to assert this claim.

### D. Implied Warranty of Fitness for a Particular Purpose

Finally, Plaintiff's SAC attempts to assert a new claim for breach of implied warranty of fitness for a particular purpose. This proposed amendment is futile.

The CPLA recognizes a claim for breach of the implied warranty of fitness for a particular purpose, the elements of which are provided by the Connecticut Uniform Commercial Code ("UCC"), Conn. Gen. Stat. § 42a-2-315. *Walters v. Howmedica Osteonics Corp.*, 676 F. Supp. 2d 44, 55 (D. Conn. 2009). This provision of the UCC states that the implied warranty exists when a seller has reason to know of "any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Conn. Gen. Stat. § 42a-2-315. The UCC comments provide that a "particular purpose" is one that "differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability." *See id.* at Comment (2);

*see also Hartford Cas. Ins. Co. v. PureTech Waters of Am., LLC*, No. CV116021419S, 2012 WL 1435221, at *3 (Conn. Super. Ct. Mar. 30, 2012) ("The implied warranty of fitness for a particular purpose is meant to be narrower than the warranty of merchantability and thus requires that allegation [that a good was used for a particular, rather than ordinary, purpose].")  To state a claim for breach of the implied warranty for fitness for a particular purpose, a party must allege:  "(1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller."  *Leonard*, 504 F. Supp. 3d at 99 (quoting *Lennox II*, 2020 WL 705263, at *9).  A plaintiff need not have entered into a contractual relationship with the product seller in order to bring a claim for breach of an implied warranty.  *See Lennox II*, 2020 WL 705263, at *8.

In a footnote in the Court's previous ruling, the Court noted that, although Plaintiff's claim for breach of the implied warranty of merchantability was not plausible, her allegation that she relied on the safety of Defendant's airbag to break her fall may be relevant to a claim for breach of the implied warranty of fitness for a particular purpose.  *See Zern*, 2023 WL 9783149, at *9 n.9. Plaintiff has now abandoned her merchantability claim, but seeks to assert a new implied warranty claim under this theory.  With respect to this new claim, Plaintiff alleges that Defendant claimed its airbag was fit for the "particular purpose of an adventure park" when it was not; that it was foreseeable that "minor children would be relying on the safety of [Defendant's] airbag to safely break their fall when jumping off a launch pad;" and that Defendant breached the implied warranty by warranting that the product was safe for use "under ordinary circumstances and in an ordinary manner" when in fact it was "far too dangerous" for use in this way, in part because it was "tested by using an adult of unknown height and weight to determine level of proper inflation then sold to an adventure park designed for minor children."  *See* ECF No. 44-2 ¶¶ 14(a), 17, 18.

The Court agrees with Defendant that these allegations are futile.  First, Plaintiff fails to identify any "particular purpose," as opposed to an "ordinary purpose," that the airbag was used for.  *See Hartford Cas. Ins. Co.*, 2012 WL 1435221, at \*3; *see also Schenck v. Pelkey*, 176 Conn. 245, 254–55 (1978) (where plaintiffs used swimming pool slide for its "ordinary purpose," the correct warranty was "one of merchantability," which was the "broader" of the two implied warranties).  *But see Lennox II*, 2020 WL 705263, at \*1, \*9 (allowing breach of implied warranty of fitness for a particular purpose claim where product was used only in an "ordinary and foreseeable manner").  Although Plaintiff uses the words "particular purpose" in a few allegations, she alleges ultimately that the airbag was unfit when used, including by Plaintiff, "under ordinary circumstances and in an ordinary manner," *see* ECF No. 44-2 ¶ 18, which goes to the implied warranty of merchantability, not of fitness for a particular purpose.  Second, even were the Court to assume that the "particular purpose" Plaintiff intends to allege is the use of the airbag by minor children, that Plaintiff sufficiently alleged that Defendant had reason to know because Defendant marketed to adventure parks (an allegation that is not supported by any factual content in the proposed SAC), and that it was foreseeable to Defendant that "minor children rel[ied] on the safety of [Defendant's] airbag," *see id.* ¶ 17, she does not allege that *she* relied on the safety of the airbag, nor that she or anyone else relied on the Defendant's *skill or judgment* in furnishing the product, which is likewise fatal to the proposed new claim.  *Compare Leonard*, 504 F. Supp. 3d at 99 (dismissing implied warranty claim where complaint did "not plausibly suggest that [plaintiff] actually relied on Defendants or had a certain expectation of the products"); *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 452 (D. Conn. 2021) (dismissing claim where plaintiff failed to allege she "relied on the [defendant product manufacturer's] skill or judgment"); *to Lennox II*, 2020 WL 705263, at \*9 (sustaining implied warranty claim where plaintiff alleged it "actually

relied on the Defendants"). *See also* Conn. Gen. Stat. § 42a-2-315 (implied warranty exists where buyer "rel[ies] on the seller's skill or judgment to select or furnish suitable goods").

The Court will not address whether the proposed SAC states a breach of implied warranty of merchantability claim because Plaintiff has expressly abandoned that claim.

Accordingly, Plaintiff's request for leave to amend her complaint to add a new claim for breach of the implied warranty of fitness for a particular purpose is DENIED.

## IV.  CONCLUSION

For the reasons described herein, Plaintiff's first and second motions to amend the complaint are GRANTED IN PART AND DENIED IN PART.  Specifically, the Court grants the motions with respect to the claims for failure to warn and negligence, but denies the motions with respect to the claims for fraudulent misrepresentation and implied warranty of fitness for a particular purpose.

Insofar as the Court has disallowed Plaintiff's fraudulent misrepresentation and implied warranty of fitness for a particular purpose claims, it strikes paragraphs 12(f), 12(g), and 18 of the proposed SAC as immaterial and impertinent to the claims the Court has allowed to proceed.[6]  *See* Fed. R. Civ. P. 12(f).  The other proposed allegations may remain.

By **March 18, 2024**, Plaintiff shall file a Third Amended Complaint, in accordance with this opinion.  Defendant shall answer or otherwise respond to the Third Amended Complaint by **April 1, 2024**.

---

[6] The decision to strike these paragraphs is without prejudice to Plaintiff seeking to admit evidence related to Defendant's statements on its website should this matter proceed to trial, insofar as such evidence is relevant to Plaintiff's other theories.

**SO ORDERED** at Hartford, Connecticut, this 4th day of March, 2024.

 _/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE